IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| CRAIG SMALLWOOD, | ) | CV. NO. 08-00512 DAE-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| U.S. ARMY CORP OF | ) | |
| ENGINEERS, HASEKO (EWA) | ) | |
| INC., and CITY AND COUNTY OF | ) | |
| HONOLULU, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANT U.S. ARMY CORPS
OF ENGINEER'S MOTION TO DISMISS; GRANTING
DEFENDANT HASEKO (EWA), INC.'S MOTION TO DISMISS;
AND GRANTING PLAINTIFF LEAVE TO AMEND

On January 20, 2009, the Court heard Defendant Haseko (Ewa),

Inc.'s motion, the City and County of Honolulu's joinder thereto, and the Army

Corps of Engineer's motion.  Plaintiff Craig Smallwood appeared at the hearing

pro se; Harry Yee, Assistant U.S. Attorney, and Shivaun White, appeared at the

hearing on behalf of Defendant U.S. Army Corp of Engineers; Paul H. Sato, Esq.,

appeared at the hearing on behalf of Defendant Haseko (Ewa), Inc. ("Haseko");

Don Kitaoka, Deputy Corporation Counsel, appeared on behalf of Defendant City

and County of Honolulu ("CCH").  After reviewing the motions and the supporting and opposing memoranda, the Court GRANTS Defendant Haseko (Ewa), Inc.'s, Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement (Doc. # 9), GRANTS CCH's joinder thereto (Doc. # 19), and GRANTS the Army Corps' of Engineers' (the "Corps") Motion to Dismiss (Doc. # 16).

Plaintiff's Complaint is dismissed with prejudice as to his state law claims based upon immunity of the United States and the statute of limitations. Likewise, Plaintiff's NEPA claim based upon the Record of Decision, the original DA Permit, the January 2002 amendment to the DA Permit, and the federal Final Environmental Impact Statement are dismissed with prejudice because they are barred by the statute of limitations.  In addition, any claim for injunctive relief relating to the Wall at Papipi Road is dismissed with prejudice.

Plaintiff's Complaint is dismissed without prejudice with respect to a NEPA claim regarding the July 2002 amendment to the DA Permit, a negligence claim under the Federal Tort Claims Act, and a Clean Water Claim.  Plaintiff is hereby granted leave to amend his Complaint with respect to those claims.  The amended Complaint, if any is filed, should contain allegations establishing that Plaintiff exhausted his administrative remedies where necessary, in addition to setting forth other pertinent facts to his claims.  Plaintiff has 45 days from the date

of the filing of this order to file an amended Complaint.  Failure to do so will result

in dismissal with prejudice as to all of his claims.

## BACKGROUND

Haseko has planned a major residential and commercial development

on an 1,100 acre property (the "Development").  The Development includes a

5,000 unit residential community in the uplands and a marina.  The marina was to

be constructed in the upland area straddling the Honouliuli sewer outfall.  Because

Haseko originally planned to connect the marina to the ocean, it would be creating

a navigable water of the United States, which requires a Rivers and Harbors Act

("RHA") section 10 permit, and the discharges of dredged or fill material into

waters requires a Clean Water Act ("CWA") section 404 permit.

Pursuant to 33 C.F.R. § 320.1 (a)(6), the Corps

> authorized its district engineers to issue formal
> determinations concerning the applicability of the Clean
> Water Act or the Rivers and Harbors Act of 1899 to
> activities or tracts of land and the applicability of general
> permits or statutory exemptions to proposed activities. A
> determination pursuant to this authorization shall
> constitute a Corps final agency action. Nothing contained
> in this section is intended to affect any authority EPA has
> under the Clean Water Act.

In 1993, the Corps issued a permit (the "DA Permit") to Haseko

authorizing it to excavate a 120 acre marina, dredge an entrance channel, dispose

3

of dredged material into the ocean, and construct and install infrastructure in the

marina, pursuant to section 10 of the RHA, section 404 of the CWA, and section

103 of the Marine Protection, Research and Sanctuaries Act.  In addition, the DA

Permit authorized construction of the interface of the Kaloi Gulch Drainage

channel into the marina, and the discharge of fill material associated with building

the connection because that was deemed work in a navigable water of the United

States.  On June 1, 2001, the DA Permit was extended to December 31, 2020.  The

Corps determined that a permit was not required for the upland area residential

development or the upland portions of the Kaloi Gulch Drainage channel.

Although the reason for this decision may be in the record, the Corps did not

explain the reason for this decision in its brief or point this Court to the record.

The DA Permit was issued pursuant to the Record of Decision

("ROD"), which was issued after the Corps had accepted the Final Federal

Environmental Impact Statement ("FFEIS") for the marina.  There is no evidence

that Plaintiff objected to or commented upon the ROD, the DA Permit, the FFEIS,

or a draft EIS.  The ROD noted that the appropriate scope of the NEPA

documentation under Corps' authority is the marina, water-related construction,

and marina-related amenities, as activities occurring in the waters of the United

States.  In addition, the ROD noted that the State Department of Health regulated

potential non-point discharges under the CWA through the NPDES program and that EIS documents would be prepared pursuant to State law.

In 2002, Haseko agreed to the reduction of the marina because it would have otherwise been required to use an inverted siphon for the Honouliuli sewer outfall, which would have impacted navigability of the marina.  The Kaloi Regional Drainage would be rerouted and incorporated into the golf course on the project.  This change was approved by CCH pursuant to a rezoning request and a Final Supplemental Environmental Assessment was prepared by CCH.  After comments were provided, CCH issued a Finding of No Significant Impact ("FONSI").  There is no evidence that Plaintiff objected to or commented upon the FONSI.

The DA Permit was amended on January 14, 2002, to reduce the size of the marina from 120 acres to 70 acres, eliminating the marina east of the sewer outfall.  The Corps noted that the FFEIS had considered a 70 acre marina as an alternative.

CCH raised concerns about maintenance of the Honouliuli sewer outfall and mishaps that may occur from tying the Kaloi Regional Drainage channel with the sewer infrastructure.  The Kaloi Regional Drainage channel within the Development therefore needed to be rerouted again to divert regional

storm water flows through an existing emergency Kaloi Gulch drainage channel which discharged into the ocean at Oneula Beach Park.  In addition, the marina size was further reduced to approximately 53 acres.  The Corps did not state in its brief whether it had previously considered a marina the size of 53 acres.

In June 2004, CCH requested that the Corps comment on its Environmental Impact Statement ("EIS) notice for the Kaloi Gulch Drainageway Improvements project ("KGI Project") at Oneula Beach Park.  On July 12, 2004, the Corps determined that work in Kaloi Gulch did not require a permit.

On December 15, 2004, Plaintiff filed a complaint against CCH and Haseko in First Circuit Court of the State of Hawaii, civil no. 04-1-2315-12 (SSM) ("State Court Action").  The Corps was not named as a defendant in the State Court Action.  The complaint sought relief related to the plan for stormwater runoff from Kaloi Gulch going to the beach and ocean at Onelua Beach Park near Smallwood's home, allegedly without a proper environmental assessment.  The trial court dismissed the action on February 23, 2005.  Plaintiff appealed, and the dismissal was reversed by the Intermediate Court of Appeals on March 14, 2008.  The court of appeals concluded that "the Circuit Court's dismissal with prejudice was based on the erroneous application of the collateral attack doctrine and, therefore, it was error for the Circuit Court to dismiss Smallwood's Complaint with

6

prejudice." Smallwood v. City and County of Honolulu, 185 P.3d 887, 902 (2008). The case was remanded for further proceedings. On September 22, 2008, Plaintiff filed a second amended complaint alleging that Haseko engaged in illegal building and construction practices and CCH failed to enforce violations of its permits. Plaintiff filed a motion for preliminary injunction in the State Court Action, seeking revocation or suspension of permits and discussing the Final EIS. By minute order on November 5, 2008, the court denied Plaintiff's motion for preliminary injunction without prejudice and granted Plaintiff's motion to dismiss the case so that he could file his claims in federal court.

While the State Court Action was on appeal, the DA Permit was amended again on June 29, 2005, to reduce the size of the marina to 51.3 acres. In addition, Haseko no longer planned to connect the Kaloi Gulch Drainage channel to the marina, and instead planned to allow storm water to overflow into Oneula Beach Park. The Corps determined that this action did not require a permit, and thus, in the 2005 amended DA Permit removed the authorization for the connection of the Kaloi Gulch Drainage channel to the marina. All general and special conditions of the DA Permit remained in place.

With the relocation of the Kaloi Regional Drainage Channel, Haseko prepared the Final EIS for the KGI Project at Oneula Beach Park. The Final EIS

states that a DA permit is not required because: 1) the entire Kaloi Gulch, unlike the marina, is not subject to the Corps' jurisdiction because it is not a water or navigable water of the United States; and 2) the stormwater overflow from the Kaloi Gulch is not going to be connected to a navigable water or water of the United States or the marina through structure or surface water connection that would result in a discharge of fill material into the ocean.  Instead, Haseko plans to retain or impound the water in the Kaloi Gulch and any overflow flows through a drainageway channel through Oneula Beach Park, which is outside of the Corps' jurisdiction.  The Final EIS was accepted by CCH on December 23, 2005.  Plaintiff participated in this process and received a copy of the Final EIS, pursuant to Hawaii Revised Statute section 343-7(c).

In 2006, CCH determined that the reduction of the marina would not result in significant changes in land use or previous environmental disclosure statements and determined that an additional environmental assessment or EIS was not required ("EA Waiver").  There is no evidence that Plaintiff objected to this determination. Haseko's reconfiguration of the Kaloi Regional Drainage channel within the Development was approved by CCH for rezoning in 2007.

Plaintiff filed the instant suit pro se against the Corps, Haseko, and CCH on November 13, 2008.  Plaintiff simultaneously filed a motion for a

temporary restraining order ("TRO").  In his Complaint, Plaintiff discusses the run-off over the beach, alleges illegal building and construction practices and non-enforcement of permits.  Plaintiff alleges that the KGI Project is being constructed without proper permits and in violation of environmental laws, and that the Corps should have determined that a DA Permit was required for that project.  Plaintiff claims that the Corps should have obtained a supplemental EIS before amending the DA Permit and was negligent in allowing the Development to go forward.  Plaintiff also alleges that the drainage project along Papipi Road was done without an EIS and that construction of a wall at the road blocks the natural surface drainage.  Plaintiff further alleges that the marina was approved without proper environmental disclosures and it was downsized to accommodate changes to the KGI Project.  Plaintiff seeks an order requiring Haseko to build a 120 acre marina and that the KGI Project be required to empty into the marina.  In his Complaint, Plaintiff cites only to Hawaii statutes.  In his TRO motion, however, Plaintiff cites to the National Environmental Policy Act ("NEPA").

On November 13, 2008, this Court denied Plaintiff's motion for a temporary restraining order because there was no allegation of immediate irreparable harm.  (Doc. # 4.)  This Court construed Plaintiff's motion as one for preliminary injunction and set it for hearing.

On November 25, 2008, Haseko filed its motion to dismiss.  (Doc. # 9.)  The Corps filed its motion on November 28, 2008.  (Doc. # 16 .)  CCH filed a substantive joinder to Haseko's motion on November 26, 2008.  (Doc. # 19 .)  Because the motions to dismiss challenged this Court's jurisdiction, this Court continued the preliminary injunction motion to be heard after the motions to dismiss were decided.

Plaintiff did not file an opposition to either motion.  Instead, on January 8, 2009, Plaintiff filed a memorandum in support of his motion for preliminary injunction.  (Doc. # 24.)  In this filing, Plaintiff discusses the arguments raised by Defendants in the two motions to dismiss and the joinder, and he states that implied in his Complaint are violations of the Endangered Species Act ("ESA"), the CWA, NEPA, the Administrative Procedure Act and the Federal Water Pollution Act.  Haseko filed a reply brief on January 12, 2009.  The Corps did not file a reply brief.

## STANDARD OF REVIEW

### I.  Federal Rule of Criminal Procedure Rule 12

Defendants brought their motions based upon lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim pursuant to 12(b)(6).

In a motion to dismiss for lack of the subject matter jurisdiction the plaintiff bears the initial burden of proving that subject matter jurisdiction exists. Prescott v. United States, 973 F.2d 696, 701 (9th Cir. 1992). Upon a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may make a jurisdictional attack that is either facial or factual. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack occurs when the movant "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Id. A factual attack occurs when the movant "disputes the truth of the allegations, that by themselves, would otherwise invoke federal jurisdiction." Id.

In resolving a facial attack on the allegations of the complaint, the court must accept the allegations of the complaint as true. Mason v. Arizona, 260 F. Supp. 2d 807, 815 (D. Ariz. 2003). "Unlike a Rule 12(b)(6) motion, however, the court will not reasonably infer allegations sufficient to support federal subject matter jurisdiction because a plaintiff must affirmatively allege such jurisdiction." Id.

If the movant makes a factual attack on jurisdiction, the court may review evidence beyond the complaint. Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). In resolving an attack on the facts, however, a

11

court may weigh evidence to determine whether it has jurisdiction, as long as the jurisdictional facts are not intertwined with the merits.  <u>Rosales v. United States</u>, 824 F.2d 799, 803 (9th Cir. 1987).  "No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. "  <u>Thornhill Publishing Co.</u>, 594 F.2d at 733.  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  <u>Savage v. Glendale Union High Sch.</u>, 343 F.3d 1036, 1039 n.2. (9th Cir. 2003).

   For failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), review is limited to the contents of the complaint.  <u>See</u> <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 754 (9th Cir. 1994).  Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff.  <u>See</u> <u>Livid Holdings Ltd. v. Salomon Smith Barney, Inc.</u>, 416 F.3d 940, 946 (9th Cir. 2005).  A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1965 (2007).  In providing grounds for relief, however, a plaintiff must do more

than recite the formulaic elements of a cause of action.  See id. at 1966.  A plaintiff

must include enough facts to raise a reasonable expectation that discovery will

reveal evidence.  In other words, a plaintiff must allege enough facts to state a

claim for relief that is plausible on its face.  See id. at 1974.  "[C]onclusory

allegations without more are insufficient to defeat a motion to dismiss for failure to

state a claim."  McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988).

When a plaintiff appears pro se, the court has an obligation to

construe the plaintiff's complaint liberally.  See Bernhardt v. Los Angeles County,

339 F.3d 920, 925 (9th Cir. 2003); Jackson v. Carey, 353 F.3d 750, 757 (9th Cir.

2003) (same).  Pro se plaintiffs in a civil rights action must be afforded the benefit

of any doubt.  See Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623

(9th Cir. 1988). "A pro se litigant must be given leave to amend his or her

complaint unless it is 'absolutely clear that the deficiencies of the complaint could

not be cured by amendment.'" Id. (quoting Noll v. Carlson, 809 F.2d 1446, 1448

(9th Cir. 1987), superceded by statute, Lopez v. Smith, 203 F.3d 1122, 1126-30

(determining that a district court retains its discretion to dismiss a pro se prisoner's

in forma pauperis complaint with or without leave to amend under the Prisoner's

Litigation Reform Act)).

13

II.  The Administrative Procedure Act Standard

        The judicial review provision of the Administrative Procedure Act ("APA") is the vehicle for Plaintiff's claims of violations of NEPA, as NEPA does not authorize a private right of action.  Turtle Island Restoration Network v. U.S. Dept. of Commerce, 438 F.3d 937, 942 (9th Cir. 2006).  Under the APA, agency decisions may be set aside if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).  This is a deferential standard and courts must presume that an agency action is valid.  Sierra Club v. Marsh, 976 F.2d 763, 769 (1st Cir. 1992).  The relevant inquiry is whether the agency "considered the relevant factors and articulated a rational connection between the facts found and the choice made."  Pyramid Lake Paiute Tribe v. U.S. Dep't of Navy, 898 F2d 1410, 1414 (9th Cir. 1990) (citation omitted).

## DISCUSSION

        Haseko argues that this Court lacks jurisdiction because the parties are not diverse and Plaintiff did not allege a violation of a federal law in his Complaint.  Haseko also argues that Plaintiff failed to exhaust his administrative remedies, and his claims are barred by the statute of limitations or the doctrine of laches.  Haseko argues that Plaintiff's claims pertaining to drainage along Papipi

14

Road are barred by res judicata or collateral estoppel.  In the alternative, Haseko

requests that Plaintiff be ordered to provide a more definite statement.  CCH joined

in the legal arguments of Haseko's motion.

The Corps argues that Plaintiff's state law claims against it should be

dismissed because the United States has not waived its sovereign immunity for

those claims.  The Corps argues that this Court does not have jurisdiction under

NEPA because the Corps reasonably determined that the change to the connection

from the marina and instead to the Kaloi Gulch removed the Corps' statutory

authority.  Finally, the Corps argues that this Court lacks jurisdiction over any

negligence claim because Plaintiff has not exhausted his administrative remedies

under the Federal Tort Claims Act.

I.     Jurisdiction

Haseko argues that this Court does not have jurisdiction because the

parties are not diverse and Plaintiff does not cite to a violation of federal law in his

Complaint.  Taking Plaintiff's Complaint, his motion for a TRO and his

memorandum in support of his TRO, Plaintiff alleges violations of the CWA,

NEPA, the ESA, Hawaii Revised Statutes chapter 343, and negligence.  In

addition, Plaintiff's Complaint referred to environmental laws in general.

In its reply brief, Haseko argues that this Court should not construe Plaintiff's memorandum in support of his preliminary injunction motion as an opposition to the motions to dismiss because it is untimely.  Although untimely and incorrectly titled, this Court will consider the memorandum as Plaintiff's opposition because Plaintiff is pro se, he addresses the arguments raised in the motions to dismiss, and he attempts to clarify the basis for federal jurisdiction.

In his filing, Plaintiff specifically cites to the CWA, claiming that Defendants are violating 33 U.S.C. §§ 1311 and 1365 by allowing discharges of pollutants without a permit under the National Pollutant Discharge Elimination System ("NPDES").  Because Plaintiff clarified this for the first time in his opposition, neither party directly addressed any alleged CWA violations.

The CWA has a citizen suit provision.  33 U.S.C. § 1365.  It appears that the parties agree that the Development has added storm water run-off into the pre-existing Kaloi Gulch Drainage which apparently empties into the ocean at Oneula Beach Park.  If true, it is possible that Kaloi Gulch Drainageway is a water of the United States if it has a continual flow of water, and that Haseko is adding pollutants to the waters without a permit and that such violations, if any, are not

16

being monitored or enforced by CCH or the United States.[1]  However, given the state of the record it is too early to make that determination.

Although Plaintiff's allegations may not prove to be true, they are sufficient to allege jurisdiction in federal court based upon federal question, 28 U.S.C. § 1331.  Moreover, as a pro se Plaintiff, his Complaint meets the standard of Federal Rule of Civil Procedure 8, that he provide a short and plain statement of the facts.

Accordingly, this Court has jurisdiction to consider Plaintiff's claims and the arguments raised in the motions to dismiss.

---

[1]  The CWA provides that "the discharge of any pollutant by any person shall be unlawful."  33 U.S.C. § 1311(a); see also United States v. Moses, 496 F.3d 984, 988 (9th Cir. 2007)(The CWA "outlaw[s] the unauthorized 'discharge of any pollutant by any person.  That, in turn, means that [a person] could not add 'any pollutant to navigable waters,' which means 'the waters of the United States'") (citations omitted).

"The term 'person' means an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body."  33 U.S.C. § 1362(5).  "The term 'pollutant' means dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, . . . ." 33 U.S.C. § 1362(6). The term water of the United States includes "channels containing permanent flow[,]" Rapanos v. United States, 547 U.S. 715, 733 n.5 (2006), but does not normally include "ditches, channels, and conduits carrying an intermittent flow of water[.]"  Id. at 735-36.

II.     <u>State Law Claims</u>

   A.     <u>United States' Immunity</u>

   The Corps argues that Plaintiff's claims under Hawaii Revised Statute

chapter 343 and any other state law claims should be dismissed because the United

States has not waived its sovereign immunity to suit for violations of state law.

> It is elementary that "[t]he United States, as sovereign, is
> immune from suit save as it consents to be sued . . ., and
> the terms of its consent to be sued in any court define that
> court's jurisdiction to entertain the suit." A waiver of
> sovereign immunity "cannot be implied but must be
> unequivocally expressed." In the absence of clear
> congressional consent, then, "there is no jurisdiction in
> the Court of Claims more than in any other court to
> entertain suits against the United States."

<u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980) (citations omitted) (alterations

in original); <u>Block v. N. Dakota ex rel. Bd. of Univ. and Sch. Lands</u>, 461 U.S. 273,

287 (1983) ("The basic rule of federal sovereign immunity is that the United States

cannot be sued at all without the consent of Congress.").

   There is no evidence that the United States has consented to be sued

for violations of Hawaii statutes or Hawaii common law claims.  Accordingly, all

state law claims against the Corps are DISMISSED with prejudice.

B.     Untimely Filing

Haseko argues that Plaintiff's state law claims must be dismissed

because Plaintiff did not challenge CCH's EIS findings in a timely manner.

Hawaii Revised Statute § 343-7(c) provides that

> [a]ny judicial  proceeding, the subject of which is the
> acceptance of an environmental impact statement
> required under section 343-5, shall be initiated within
> sixty days after the public has been informed pursuant to
> section 343-3 of the acceptance of such statement. . . . the
> contestable issues shall be limited to issues identified and
> discussed in the written comment.

Section (b) provides that challenges to CCH's FONSI or its EA waiver must be

brought within 30 days of public notification of the action.  Haw. Rev. Stat. § 343-

7(b).

Here, although Plaintiff filed the State Court Action in December

2004, Plaintiff does not identify any EIS that was accepted within sixty days of the

filing of the suit.  In addition, the FEIS was accepted on December 23, 2005.

Plaintiff did not bring a judicial proceeding within 60 days of that time.  Although

the State Court Action was on appeal, Plaintiff did nothing to pursue his claims

regarding the FEIS.  Moreover, the State Court Action could not have involved the

FEIS because the State Court Action was dismissed in February 2005, and was on

appeal at that time, eleven months before the FEIS was accepted.

19

Plaintiff also did not file any challenge to CCH's FONSI or the EA

waiver within 30 days of the public notification of the action taken.

Accordingly, Plaintiff's claims based upon Hawaii Revised Statute

chapter 343 pertaining to CCH's EIS, the FEIS, the FONSI or the EA waiver are

DISMISSED with prejudice.[2]

III.    NEPA

Haseko alleges that Plaintiff cannot challenge the DA Permit or the

amendments thereto under NEPA because he has not exhausted his administrative

remedies.

> The APA requires that plaintiffs exhaust administrative
> remedies before bringing suit in federal court. This
> requirement applies to claims under NEPA. "Persons
> challenging an agency's compliance with NEPA must
> structure their participation so that it . . . alerts the agency
> to the parties' position and contentions, in order to allow
> the agency to give the issue meaningful consideration."

Great Basin Mine Watch v. Hankins, 456 F.3d 955, 965 (9th Cir. 2006) (citations

omitted) (ellipses in original).  A party has exhausted the administrative remedy if

their administrative "appeal, taken as a whole, provided sufficient notice to the

---

[2]  Haseko also argues that Plaintiff's claims regarding other CCH Permits
such as planned development housing permits are barred.  Based on Plaintiff's
opposition, he does not appear to be bringing claims challenging these permits and
therefore, this Court will not address these permits.

[agency] to afford it the opportunity to rectify the violations that the plaintiffs alleged." Id. (citation omitted) (alterations in original).  The purpose of the exhaustion requirement is to avoid premature claims and ensure that the agency is "given a chance to bring its expertise to bear to resolve a claim." Id. (citation omitted).

Plaintiff has not alleged facts that could establish that he exhausted his administrative remedies.  Plaintiff has not alleged that he participated or commented upon or objected to the acceptance of the federal FEIS, the issuance of the ROD, or the issuance of the DA Permit or the modifications thereto.  In his opposition, Plaintiff states that he could not appeal a decision because the case was already in appellate court.  Plaintiff does not clarify which decision he is referring to regarding an appeal or what case was already in appellate court or which appellate court.  The only appeal in the record, however, is Plaintiff's appeal of the State Court Action.  This appeal, however, does not evidence that Plaintiff exhausted his administrative remedies and does not provide a legally cognizable reason for his failure to do so.

Moreover, even if the State Court Action could be construed as exhausting administrative remedies, that action was not instigated until 2004, more than ten years after the issuance of the DA Permit, the ROD, and the federal FEIS.

Therefore, Plaintiff's claims regarding the ROD, the original DA Permit and the federal FEIS are barred by the statute of limitations.  See Wind River Min. Corp. v. United States, 946 F.2d 710, 712 -13 (9th Cir. 1991) (holding that general six-year statute of limitations for civil actions brought against the United States in 28 U.S.C. § 2401(a) applies to actions for judicial review brought pursuant to the APA).  Likewise, any challenge to the January 2002 amendment to the DA Permit is barred because the instant suit was not filed within six years of that amendment. These portions of Plaintiff's claims are therefore dismissed with prejudice.

The only federal action that did occur within the six-year statute of limitations was the June 29, 2005 amendment to the DA Permit, allowing a further reduction to the size of the marina.  Defendants allege that with respect to this claim, even if it was properly brought under the APA, Plaintiff cannot establish that the Corps acted arbitrarily or capriciously in determining that a supplemental EIS was not necessary when the size of the marina was reduced, and the storm water run-off would be redirected to the existing Kaloi Gulch and that the change took the Kaloi Gulch portion of the project out of the Corps' jurisdiction.

Congress passed NEPA in 1970, declaring "a national policy which will encourage productive and enjoyable harmony between man and his environment."  42 U.S.C. § 4321.  The purpose of NEPA was "to promote efforts

which will prevent or eliminate damage to the environment," as well as "to enrich

the understanding of the ecological systems and natural resources important to the

Nation." Id. NEPA does not contain substantive requirements that dictate a

particular result; instead, NEPA is aimed at ensuring agencies make informed

decisions and "contemplate the environmental impacts of [their] actions." Idaho

Sporting Congress v. Thomas, 137 F.3d 1146, 1149 (9th Cir. 1998); Robertson v.

Methow Valley Citizens Council, 490 U.S. 332, 349 (1989) (concluding that

NEPA "ensures that the agency, in reaching its decision, will have available, and

will carefully consider, detailed information concerning significant environmental

impacts; it also guarantees that the relevant information will be made available to

the larger audience that may also play a role in both the decisionmaking process

and the implementation of that decision.")

        In pursuit of these goals, NEPA mandates that all federal agencies

take a "hard look" at the environmental consequences of all proposed "major

Federal actions significantly affecting the quality of the human environment"

through the preparation of an EIS.  42 U.S.C. § 4332(2)(c). In addition to aiding

internal agency decisionmaking, publication of an EIS "also serves a larger

informational role.  It gives the public the assurance that the agency has indeed

considered environmental concerns in its decisionmaking process, and, perhaps

more significantly, provides a springboard for public comment." Robertson, 490

U.S. at 349 (internal quotations and citations omitted).

The Ninth Circuit has interpreted this provision as requiring agencies

to prepare an EIS "where there are substantial questions about whether a project

may cause significant degradation of the human environment." Native Ecosystems

Council v. U.S. Forest Serv., 428 F.3d 1233, 1239 (9th Cir. 2005). The Council on

Environmental Quality ("CEQ") and other federal agencies' regulations implement

NEPA. See, e.g.,40 C.F.R. §§ 1500 et seq.; 32 C.F.R.

§§ 775 et seq.

Under these regulations, an agency may prepare an EA to determine

whether an EIS is needed. 40 C.F.R. §§ 1501.4, 1508.9(b); see also 32 C.F.R.

§ 775.2(c). The EA must identify all reasonably foreseeable impacts, analyze their

significance, and address alternatives. 40 C.F.R. §§ 1508.8, 1508.9, 1508.27. To

trigger the requirement for an EIS, a plaintiff need not show that significant effects

will in fact occur; raising "substantial questions whether a project may have a

significant effect is sufficient." Idaho Sporting Cong. v. Thomas, 137 F.3d 1146,

1150 (9th Cir. 1998) (internal citation omitted and emphasis added).

If, based on the EA, the agency concludes that the proposed actions

will not significantly affect the environment, it may issue a FONSI and forego

completion of an EIS.  <u>Bob Marshall Alliance v. Hodel</u>, 852 F.2d 1223, 1225 (9th Cir. 1988); 40 C.F.R. § 1501.4(e).  Agencies must complete an EA and, as necessary, an EIS before reaching a final decision or making an "irreversible and irretrievable commitment of the availability of resources."  <u>Envtl. Def. Fund, Inc. v. Andrus</u>, 596 F.2d 848, 852 (9th Cir. 1979).

A supplemental EIS "is required only if changes, new information, or circumstances may result in significant environmental impacts 'in a manner not previously evaluated and considered.'" <u>N. Idaho Community Action Network v. U.S. Dep't of Transp.</u>, 545 F.3d 1147, 1157 (9th Cir. 2008) (noting that an "agency is not required to prepare a SEIS every time new information comes to light") (citation omitted). "To assist the agency in determining whether a SEIS is required, an agency may prepare an environmental report (such as a reevaluation) or an EA." <u>Id.</u> (citing 23 C.F.R. §§ 771.119(a), 771.129, 771.130(c)).

In <u>N. Idaho Community</u>, the agencies prepared both an EA and a reevaluation in which they considered the changes to the project, those impacts, and the cumulative impact of the project. The agencies determined that "[a]lthough the changes would have somewhat different impacts from those previously analyzed in the 1999 EIS, . . . those impacts were not significant or adverse enough to require a SEIS" as they "did not significantly impact the environment in a way

25

not previously considered." Id.  There was no evidence that these determinations were arbitrary and capricious.  Accordingly, the Ninth Circuit found that "the Agencies' determination that the changes to the Project would not significantly impact the environment in a way not previously considered, and that a SEIS therefore was not required, was not arbitrary or capricious." Id.

Here, even under the original DA Permit, the Kaloi Gulch itself was not under the Corps' jurisdiction, because the Corps determined that it was not a navigable water.  It was only the then proposed connection of the Kaloi Gulch to the marina that was under the Corps' jurisdiction.  The DA Permit as amended in 2005 removed the connection from the marina to the Kaloi Gulch.  The Corps therefore determined that it lacked jurisdiction over the Kaloi Gulch portion of the Development.  Plaintiff has failed to establish or challenge the decision that Kaloi Gulch is a water of the United States and therefore, under the Corps' jurisdiction. Plaintiff has not shown that the Corps' decision that it did not have jurisdiction over the gulch and therefore, its decision with respect to the June 29 2005 amendment to the DA Permit was arbitrary and capricious.

In addition, Plaintiff has not shown that there were significant environmental impacts because of the June 2005 amendment to the DA Permit that

were not previously evaluated and considered such that a supplemental EIS was necessary.  Accordingly, Defendants' motions are GRANTED.

However, it is possible that Plaintiff could allege facts that may establish a claim.  For example, as set forth above, if the Kaloi Gulch had a continual flow of water then it may be arbitrary for the Corps to conclude that it was not within its jurisdiction.  In addition, the Corps stated that the EIS had considered a reduced marina.  However, the Corps did not specifically point this Court to the record where it considered whether Kaloi Gulch was a water of the United States and whether it had a continuous flow.  For these reasons, this Court GRANTS Plaintiff leave to amend his Complaint with respect to the June 29, 2005 Amendment to the DA Permit.  It may very well be that Plaintiff's claims prove to be meritless, untimely, or barred.  However, given his pro se status and the early stages of this federal case, leave to amend this claim is appropriate.

IV.   Negligence Claim

The Corps argues that Plaintiff's negligence claims are barred because he failed to exhaust his administrative remedies pursuant to the FTCA.

The FTCA provides that:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the

27

> negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675 (a).  The Complaint must allege that an administrative claim was timely filed and a "district court may dismiss a complaint for failure to allege this jurisdictional prerequisite."  Gillespie v. Civiletti, 629 F.2d 637, 640 (9th Cir. 1980).  The plaintiff, however, "should be given an opportunity to file an amended complaint to attempt to cure such pleading defects."  Id.

Here, Plaintiff has not alleged that he filed an administrative claim against the Corps.  Accordingly, Plaintiff's negligence claim is DISMISSED WITHOUT PREJUDICE.  If Plaintiff did file an administrative claim, he should so plead in an amended complaint, if he chooses to file one.

V.    Papipi Road

Plaintiff alleges that the drainage project along Papipi Road was done without an EIS and that construction of a wall at the road blocks the natural surface drainage.  Haseko argues that these claims are barred by res judicata and collateral estoppel because they were decided by the State court in the preliminary injunction order and the court of appeals stated that those issues were barred.  Plaintiff argues

28

that those doctrines do not apply because the State Court Action did not address the merits of his claims.

The relevant question in deciding whether a federal court is to give preclusive effect to a state court judgment is whether "the courts of the State from which the judgments emerged would do so."  Allen v. McCurry, 449 U.S. 90, 96 (1980).  Therefore, this Court will consider Hawaii law on the elements on res judicata and collateral estoppel.[3]  Hawaii law provides that

> [r]es judicata is applicable when: (1) the claim or cause of action in the present action is identical to the one decided in the prior adjudication; (2) there was a final judgment on the merits in the prior adjudication; and (3) the parties to the present action are the same or in privity with the parties in the prior action.

Smallwood v. City and County of Honolulu, 185 P.3d 887, 894 (2008).  "Res judicata prohibits the relitigation of all grounds and defenses which might have been properly litigated in the prior action, even if the issues were not litigated or

---

[3] This Court notes that Hawai`i's articulation of collateral estoppel and res judicata are similar to the federal standard. See Durkin v. Shea & Gould, 92 F.3d 1510, 1515-16 (9th Cir. 1996) (collateral estoppel requires "a final judgment on the merits"); Western Radio Servs. Co. v. Glickman, 123 F.3d 1189, 1192 (9th Cir. 1997) (Res judicata, or claim preclusion, "bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action."); Tahoe Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1077 (9th Cir. 2003) (res judicata  applies whenever three elements are met: (1) an identity of claims; (2) a final judgment on the merits; and (3) privity between parties").

decided in the earlier adjudication of the subject claim or cause of action." Id. at

895.

With respect to collateral estoppel, Hawaii law provides that the party

asserting it must prove the following four elements

> (1) the fact or issue in the present action is identical to
> the one decided in the prior adjudication; (2) there was a
> final judgment on the merits in the prior adjudication; (3)
> the parties to the present action are the same or in privity
> with the parties in the prior action; and (4) the fact or
> issue decided in the prior action was actually litigated,
> finally decided, and essential to the earlier valid and final
> judgment.

Id.

In the State Court Action, the Intermediate Court of Appeals applied

these doctrines and concluded that "Smallwood's claim for injunctive relief

regarding the Retaining Wall bordering the Ocean Pointe Development along

Papipi Road in Ewa Beach (Papipi Road Retaining Wall) was actually adjudicated

on the merits and dismissed, with prejudice, in the Prior Order Denying Injunctive

Relief." Id. at 900.  The court further stated that

> If Smallwood seeks injunctive relief herein as to the
> Papipi Road Retaining Wall, he is barred by res judicata
> from relitigating such claims. To the extent that
> Smallwood seeks to relitigate facts or issues that were
> adjudicated in conjunction with the evidentiary hearings
> on his prior request for injunctive relief as to the Papipi

30

Road Retaining Wall, under the doctrine of collateral estoppel, he is bound by the prior court's findings and conclusions regarding such facts or issues, if their determination was essential to the final adjudication in the Prior Litigation.

Id. at 901.

Therefore, to the extent Plaintiff is raising any claims for injunctive relief against Haseko relating to the retaining wall along Papipi Road, such claims are barred by the doctrine of res judicata and dismissed with prejudice.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant Haseko (Ewa), Inc.'s Motion to Dismiss, CCH's joinder thereto, and GRANTS the Corps' Motion to Dismiss.  Because Plaintiff is pro se, he is granted leave to amend those specific claims outlined above that were dismissed without prejudice.  Plaintiff must file an amended complaint within 45 days of the filing date of this order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 26, 2009.



_____
David Alan Ezra
United States District Judge

Smallwood v. U.S. Army Corp of Engineers, et al., CV No. 08-00512 DAE KSC; ORDER GRANTING DEFENDANT U.S. ARMY CORPS OF ENGINEER'S MOTION TO DISMISS; GRANTING DEFENDANT HASEKO (EWA), INC.'S MOTION TO DISMISS; AND GRANTING PLAINTIFF LEAVE TO AMEND